We'll hear first from Mr. Erwin Cain and then Nelson Richards, reshards of Richards.  May it please the court. Your Honors, there's a singular issue to address in this appeal and that is the State of California Department of Industrial Relations Division of Occupational Safety and Health, the division, subjected itself to specific personal jurisdiction in a letter to Bulkley & Associates, L.L.C., threatening an inspection of its only place of business, uh, which is its workplace in Brashear, Texas, to enforce the division's workplace rules. This court recent ruling in Defense Distributed v. Graywall confirms that there were minimum contacts in this case. When the two-prong analysis of specific personal jurisdiction under the Due Process Clause of the Fourteenth Amendment are applied, uh, we see that the division has sufficient minimum contacts with Texas and the exercise of personal jurisdiction does not offend the traditional notions of fair play and substantial justice. It is a three-prong test to determine minimum contacts. There were minimum contacts under all three prongs. Um, there were several demand letters sent by the division to Bulkley, uh, the September 9th, 19 letter of which included a threat of an inspection at Bulkley's workplace. The letter was purposefully directed to Bulkley, uh, in Texas and threatened a real action, uh, not one that was, uh, uh, hypothetical or a fortuity as this court saw in the, uh, in that case, the Arizona Commissioner of Real Estate, uh, was intending to enforce Arizona's regulatory scheme in Arizona. And here, the division wants to enforce California's regulatory scheme in Texas. This court found in Stroman when the nexus is caused by the plaintiff's in Stroman, that nexus was the forum state, uh, was Stroman's unilateral conduct in Arizona attempting to continue to sell timeshares in Arizona without a real estate license. In our case, however, the nexus to Texas is the division's unilateral threat of inspection in Texas. The, um, the division contends the threatened inspection would be at Bulkley's workplace in California. But that, that is, that is, uh, inconsistent. In fact, it's reconcilably inconsistent with the stipulation that the division made early on in this matter that Bulkley not only did not have a workplace in California, but never had a workplace in California. But when you keep, when you talk about place of business and workplace, am I correct that the September letter really spoke about place of employment? Is that correct? Uh, yes, your honor. The letter specifically said that it had an attachment form one 60 that clarified that the inspection completed of the place of employment located at 900 East Blanco Road, Salinas, California, correct? Yes, sir. It did. So is it your position that the place of employment mentioned in the letter is different than the place of employment mentioned in the attached form? Uh, your honor, our position is that although that letter referenced the place of employment, uh, on East Blanco Road and Salinas, California, that Buckley not only never had a workplace there, but that the division also stipulated that Buckley never had a workplace there. So the only clear interpretation of the letter when it came to inspecting a workplace was Buckley's only workplace. And that was in the sheriff's office. This present appeal is coming up after judge Mazant had already ruled and the only new evidence and the earlier ruling you hadn't appealed from. So the only evidence you're relying on to establish minimum, minimum context is this September letter? Yes, sir. And the actual statement, the actual language of the letter. Yeah. Did you allege that they actually had ever inspected you? No, your honor. Frankly, we, uh, there was an allegation in the letter that an inspection had occurred. We don't know if or when or where, well, we do know when an inspection. Why aren't these alleged contacts California availing itself of Texas law, precisely the hypotheticals that our court in Wazanski said don't count because your honor the difference between that scenario in the Stroman versus Wazanski cases because once the letter came to Texas, it wasn't, uh, it wasn't enforcing California's rules in California, which, uh, would then raise the issue of a hypothetical contact. This was an actual threatened contact of the only place of employment that, that, that Buckley has that's in Brashear, Texas. The, the, the, so what's your best authority for this sufficient being sufficient as minimum context? Uh, if it's recent court, our case in defense distributed. Yes, sir. Exactly. And I just have a briefing question because I figured, I assume that would be your answer. Your reply brief was filed before we issued that opinion. So it's very understandable. You wouldn't cite it, but if I'm not mistaken, California then brought it to our attention with discussion. And, and did you ever submit a 28 J response? No, your honor. I didn't. I know that Cal, I know that the division did and they submitted it to refute the facts. We're just taking this time to, to refute California's position, the division's position that, uh, this is consistent. I mean, this, that our position is inconsistent with just distributed. It's entirely consistent with that case. In that case, as the court knows, the attorney general, uh, gray wall, uh, not only intended to prohibit the publications of defense distributed in New Jersey, but also to stop such publications in Texas. The court was very careful to reiterate Wysinski and said, there are two key differences or you remember this. And I don't see either of it was the first amendment chilling. And the other was that New Jersey's attorney general very clearly was saying, we are going to reach you, Texas citizen and your company anywhere in the country. Whereas this seems to be exactly like Wysinski. It's a attorney general who has a completed enforcement action aimed at someone doing business and having an accident in California. Well, your honor, if the Cal, if California had indeed limited its enforcement efforts to, um, any of Buckley's places of business in California, to the extent they existed, that would be consistent with the holding in Wysinski. But because the letter was directed to Texas, came to Texas and indicated that there was going to be inspection of Buckley's place of business, the only place of which is in Texas, then we think it more clearly aligns with defense distributed. Yep. I, that, that is your argument. Yes, sir. Thank you for answering my questions. Go ahead. So yes, judge, the, the, the, um, to rely on the clear text of the letter of the threatened inspection of his workplace in Texas, because what the division really means was an inspection of a non-existent workplace in California. But on the other hand, the division wants Buckley to take at face value and literally its intent to enforce the, uh, the so-called violations, uh, uh, by collecting, uh, fines and maybe additional fines. It appears that when the circumstance is such that the language should be taken literally, then that's how the division wants to interpret its letters. But in this case, if the division wants to, uh, avoid jurisdiction in Texas, then the letter doesn't really mean what it says. The division can't have it both ways. And this conflicting, uh, uh, interpretation of the letter makes it impossible to appropriately interpret such a threat, forces a small business like Buckley into, uh, to seek redress and, and, uh, the case in it where this inspection is going to occur, and that would be in Texas. I remember recently in the Amy Comey Barrett, uh, confirmation hearings that the, the principle of textualism arose. And that's exactly the principle that applies in this case. We don't need the division's interpretation of what that letter means. We can read the letter itself. It said that if the violative conditions were not corrected, that the, that there would be an inspection of Buckley's workplace. And since, uh, since the California had already stipulated that there was no Buckley workplace in Texas, then the only place that inspection could occur was in Texas. So reading the letter as written, any reasonable businessman would assume that they were going to face an inspection in Texas. But you don't anywhere allege that the department in fact inspected in Texas. We, we state in the brief that the department says that it inspected Buckley's place of employment. And our position is that the only place that could have been was in Texas. We frankly don't know, uh, where the inspect, when, where the inspection occurred. Buckley never has had a place of employment at the Blanco Road address. Uh, the inspection said it occurred, uh, the letter said it occurred. No, I'm sorry. The division's brief said that it occurred in September of 2019. This accident happened on March the 26th of 2019. And the, the truck, which is where the incident occurred, was already back at the yard in Brashear, Texas. We don't know where the inspection occurred, and we don't know if an inspection occurred, and we don't know how there could have been workplace violations found when our rolling stock wasn't even there. And California didn't take a position that, uh, it was just going to enforce its workplace rules in California. Uh, it said place of employment, and now it wants to take the position that the definition of place employment is expansive enough to include, uh, a truck. But there is no, there is no Texas rolling stock in California that can be inspected. That is what the fortuity is. Um, and the stipulation basically, uh, nullifies that point anyway, because California's already stipulated there is no place of employment there. Brick and mortar, truck, or as they now claim, uh, the place of the accident. Okay. Your Honor, is that a minimum? Since there was no oral hearing, all Buckley had to do is to show a prime official case of minimum context, which it's done. The, um, district court said that the division's affidavit were sufficient to explain the conflict between the division's affidavit that said that they didn't plan on an inspection and the letter that said that there was a threatened inspection if there was not compliance. In that kind of a scenario, when that kind of conflict arises, then the, uh, the conflict must be resolved in favor of Buckley. So we, we ask that this matter be remanded to the court so we can have a hearing and make a determination of some of the issues that we're raising at the lower court. There are sufficient contacts of the division with Buckley in Texas for the division to have subjected itself to specific jurisdiction in Texas, and doing so would not offend tradition notions of fair play and substantial justice. And, Your Honor, if there are no more questions, I will reserve the rest of mine for my five minutes. Mr. King? Mr. Richards? Yes, good morning. May it please the court. Nelson Richards for Appelli, the California Department of Industrial Relations, Division of Occupational Safety. The district court correctly granted the division's motion to dismiss for lack of personal jurisdiction here, and this court should affirm. The division's conduct involves its efforts to enforce California's workplace safety standards relating to work performed in California. All the consequential facts and law pertain to California. Buckley sent its employee to California. The employee was injured in an accident while working in California. Buckley was cited for violating California's laws in connection with the accident, leading to its employee's injuries. And Buckley challenged that citation in California administrative proceedings. Now, Buckley chose not to follow the established procedure for seeking judicial review of California's administrative decision denying its challenge, but that doesn't mean that the decision should have to relitigate the dispute in Texas simply for communicating with Buckley about meeting both these legal obligations in California. Now, in this regard, there's no daylight between the division's conduct and the conduct of the state officials in the Stroman v. Wierczynski case and the Stroman v. Ant case. If anything, as Judge Higginson, I think, was suggesting in his questions earlier, the division's conduct is even more tied to California since it relates to a finely adjudicated violation of California's laws as opposed to an alleged violation in a cease and desist letter. There's no purposeful availment here and thus no minimum context. I'd like to address a few of the points that Counsel for Buckley made this morning, starting with the Texas. That's not a sound reading of the letter. There's no reasonable reading of the letter that would lead someone to come to that conclusion. Buckley's counsel this morning has shifted back and forth between the terms place of business and place of employment. I think as Judge Higginson was suggesting, as we pointed out in our brief, place of employment is a term of art in California. It's defined in California Labor Code Section 6303. It's an expansive term and there's really no question that when Bulkley's employee is working on a truck in California, that is the place of employment maintained by Bulkley. And I don't think Bulkley's ever really challenged that concept. So the letter itself is not ambiguous, but even if it were, the declarations that the motion to dismiss unequivocally established that the division has not been to Texas and has no intention of going to Texas. So any question about that is dispelled. And even this morning, Bulkley is still saying it doesn't know, it essentially has no evidence that the division is actually going to come to Texas. So to the extent the letter is ambiguous, the clarifying statement by the division in its declaration that it is not going to come to Texas, has no intention to do so, should resolve matter. In other words, there's no evidence that Bulkley is going to be able to submit on remand, if there were one, that would allow it to establish that the division has threatened to come to Texas. For that reason, Bulkley's contention that there's a genuine factual dispute here that has to be resolved in its favor just is simply inaccurate. As a final point this morning, I'd like to also note that the division has consistently argued that the Texas long-arm statute does not apply the division and personal jurisdiction is not appropriate for that reason. I didn't hear any argument this morning on that. It's briefed in our briefs, the Stroman v. Ruchinsky case talks about it. We think that's a plain question of statutory construction. There's simply no basis under the Texas long-arm statute to extend the out-of-state officials. Do we have to reach that issue? Because that's a little less intuitive to me. The Wysinski case didn't resolve that and the dicta there does seem in tension with the repeated statement that it would be coextensive with due process. To answer your question, your Honor, no, the court does not need to reach that question. But as the second part of the court's question about the repeated statements about Texas law being coextensive with due process, I think those statements are best read in the context in which they're made, which is in disputes between private parties. And it's fair to read that statute as coextensive with due process where the statute applies to the individual, not the statute applies to all individuals subject to state's jurisdiction. The Wysinski panel, they invited other courts to sort of confirm their, the reflections that were made. Do you know of any circuit, including our own, that has actually done that? Not to my knowledge, your Honor. We do cite a DC circuit case in our brief that has similar, it's a similar statute, but it is different. And it doesn't, I don't believe that case sort of takes up the call of the Wysinski case. Because the reason I'm asking, you probably saw that in my concurrence in defense distributed, there clearly wasn't a full agreement in the panel as to our non-resident state public officials enforcing state laws entitled to different treatment. So it's a tricky issue. Yes, your Honor. And I understand that. And I know that in the defense distributed case, the court deemed that the New Jersey attorney general had waived the issue. So it didn't reach the issue of the scope of the Texas long arm statute. And you are correct that it is a touchy issue. But that does raise actually another facet of this case, which is that Bolkley, by filing this case in Texas is in pretty clear conflict with the Supreme Court's recent decision in the Hyatt case. And what they're asking to do is have this case remanded to the district court so they could have it remanded to the Hawkins County State Court, which would be in clear tension with the Hyatt case. So the case was improperly filed in Texas State Court to begin with. It isn't, tell me if I'm wrong, but the repeated statement that it was improperly filed there, California law seems a little bit strange telling people to find judicial relief in the quote, county of residence, because no one's disputing that their county of residence is Texas. So that's just an oddity in this case, isn't it? Your Honor, the law on this point is not entirely clear as a sort of a matter of raising it here today, but that issue has already been resolved. That was resolved in the district court where Judge Mazzant rejected that argument. And indeed, all that statute is, is a venue statute, right? And that's what Judge Mazzant said in what we argued in that case. It's not a jurisdictional statute. And again, we can have a discussion about it. It is an interesting question. The only issue before us, as I asked opposing counsel, is does this September letter change the minimum context analysis? That is correct. Yes, that, that is, that is the only, only issue. And in a very quick synopsis, how would you distinguish defense distributed? Well, I think as Your Honor was suggesting earlier, the, the two grounds that the court provided in defense distributed for distinguishing the Rachinsky case are the exact same grounds that would distinguish this case from, from, from defense distributed. And that is that in defense a, you know, was itself the basis for the alleged tort. Whereas here, the collection letter, the letter sent by the division are efforts to enforce California judgments. And if you look at the complaint, it's not challenging the, the, the ability of the division to come to Texas, work might arise out of that. What they're really challenging is the fully and finally adjudicated status of their citation, right? They want the court to issue an injunction to prevent any inspection of its place of employment going forward, which would include its proximity comes to California. It wants to preclude the state from, from seeking a judgment of the civil penalties that are already final in California that were not challenged as a result of the administrative proceedings. But, but the September, the September letter, it doesn't seem to sort of restrict or cabin this enforcement to Bulkley's California business, correct? By its terms, the letter does not specifically state that it's, that it's limited to California, but that is the only reasonable reading of the letter. Again, the reference to the, the place of the accident in Salinas, and also the commission's practice, it doesn't go outside California and enforce California's law. I had the same question judge Higginson did, which was distinguishing, you know, defense distributed from this case, because in that case, we found that the New Jersey AG did create minimum contacts with Texas because he failed to limit his enforcement actions to the plaintiff's New Jersey business. And here we've got the September letter that likewise does not limit its enforcement to the California business. And I just wondered, you've already answered judge Higginson's question, but I'm still a little fuzzy on how you can still win in light of that case and how it's distinguishable. Well, your honor, yeah, I think that the reason why we would win is because the letter is actually in fact, limited to California. And to the extent that, that you find the letter ambiguous, we think the Tatum declaration would serve to clarify that, that the division does not enforce law outside of California. In addition to the Tatum declaration, as we cite in our brief, the California labor code would further confirm that. The grant of authority to the division gives it, in labor code section 6307, the power, jurisdiction, and supervision over every employment place of employment in this state that is in California. So there's no suggestion that the division's intending to exceed its statutory grant of power here. The letter itself is pretty clearly referring to the place of employment, which is where the accident happened, the truck or the place of employment where the Berkeley employee was injured. And again, if there's any doubt about that, we have undisputed, uncontradicted, unequivocal evidence in the record that the extending the law beyond California. And I think that that is actually in stark contrast with the defense distributed case where there was a large record there of the New Jersey attorney general's efforts to enforce or to challenge defense distributed conduct across the nation. It had effects in Texas, but the court really talked about how this was an attempt to grind down defense distributed. It was an intent to have a national effect and regulate the national scope. And that's just completely different from what's going on here. Does that complete your argument, Mr. Richard? Yes. So unless the court has no further questions, we would request that it is motion to dismiss. Thank you. You're muted, Mr. Kane. Back to Mr. Kane. I'm sorry. Your honors, you raised a good point regarding the consistency of these facts with the defense distributive case. One of the things that the division did not do was as the court held in defense distributive, it didn't cabin its enforcement actions to California. A reasonable reading of the letter, in fact, the only reasonable reading of the letter was the enforcement actions would exceed the boundaries of California and come all the way to Texas because of the only place, was in Texas. And also the division directed its letter directly to Texas. And it wasn't just for an attempt to exercise its regulatory schemes in California. It would have limited it to California had it done so. It left it open for interpretation that the inspection would occur in Texas and beyond interpretation because of the stipulation by the division that the only place of employment, a place of business was in Texas. What we're dealing with here is whether a state agency can unilaterally enter and are threatened to enter another state to enforce its rules in the form state without being subject to personal jurisdiction in that state. I mean, it's bigger than a $6,180 fine that we have in this case. It's an unconstitutional overreach for the division to do so. I mean, just because an employer sends an employee into a foreign state does not give that state de facto control of the workplace rules of that employee's employer in a foreign state. And that's what the division wants to do here. Mr. Richards suggested that your position would mean that California couldn't inspect your trucks even hereafter when they go into California. That's not the position we're taking at all, your honor. California is free to enforce its laws in California as it sees fit under California law, but it can't invade a foreign state to do that without anticipating that it will be hailed into the courts of that state. I mean, when a state agency such as the division in this case comes or threatens to come to Texas to enforce its regulations on the Texas workplace, it subjects itself to Texas jurisdiction. The quick answer is they're saying they're not availing themselves of Texas law when the workplace safety accident occurred in California, fully adjudicated, and now they're just trying to collect on the fine. So they send the letter to the only place they can saying you need to play. Well, your honor, that may very well be what they intended, but it's really not what the letter said. If they didn't want to inspect a workplace outside the forum of California, it should have made it clear because the problem is the conflict with the division stipulation that Buckley had no workplace in California. How else is Buckley supposed to interpret that letter when it only has one workplace? That's in Texas. I mean, if California wanted to require attorneys licensed in other jurisdictions who came to California to take depositions to wear wigs during those depositions and an out-of-state attorney came to California, took a deposition without wearing a wig, California would certainly be justified in enforcing its rules to not allow that attorney to appear in any California court until appropriate disciplinary proceedings or fines or whatever. But California is not authorized to go to that attorney's jurisdiction and try to require him to wear a wig in those depositions or to getting disciplined or to getting disbarred. California has overreached authority, and if it's going to do that, if it's going to, to attempt to enforce outside of California, it's got to understand that it is availing itself of the laws of that court. Your argument here doesn't depend on a Calder effects test analysis. It doesn't. I suppose your honor that Calder could apply in a sense because when you think about what kind of chilling effect this is going to have on commerce from trucking companies or any other company in Texas that may want to either do business in California or have interstate commerce through California, that would have a major chilling effect. And not the fact that there's going to be substantial fines levied if there are violations of California's work rules on a company in Texas that establishes their policies and work rules there. Okay, great. Thank you. Okay. The case is here. That concludes our oral argument cases for today. So this panel will be adjourned until nine o'clock tomorrow morning.